307 So.2d 850 (1975)
Kenneth Bernard HANNIGAN, Appellant,
v.
STATE of Florida, Appellee.
No. V-210.
District Court of Appeal of Florida, First District.
February 13, 1975.
*851 Richard W. Ervin, III, Public Defender, and David J. Busch, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Michael M. Corin, Asst. Atty. Gen., for appellee.
PER CURIAM.
This case concerns one of the most blatant, inexcusable instances of the violation of a citizen's Fourth Amendment rights ever presented before this Court.
The facts are clear. Undercover vice-squad officers Taylor and Bowen of the Jacksonville Sheriff's Office effectuated a substantial drug "bust" involving many subjects on the night of December 6, 1973. One of those arrested for selling illicit drugs to the officers was David Dill who, as the middleman in a transaction, offered to take the officers to the home of an alleged distributor of the drugs, whom Dill knew only as Ken. According to the officers, they went to the appellant's home to recover the marked money used to purchase the drugs and to effectuate the appellant's arrest for "conspiracy and violation of the drug laws." They did not at that time have any cause to believe that any drugs would be found and they did not claim to be looking for any.
According to the appellant and his wife, they were awakened on the morning of December 7 at 3:00 a.m. by a knock at the door. When appellant's wife went to the door, turned on the light, and asked who was there, one of the men asked if the appellant was at home. After replying "Just a minute", appellant's wife attempted to shut the door and then proceed to get her husband out of bed. The officers, however, pushed the door open and came into the house, at which point they identified themselves as officers of the Sheriff's Department. Although the officers testified that they identified themselves as Sheriff's officers from the outset, the record is clear that the officers entered the house without the consent of either the appellant or his wife. As a result of a general search, the officers discovered two cellophane bags of tablets which later turned out to be amphetamine and phencyclidine in the pockets of appellant's jacket which was present in the living room. At this point, the appellant was arrested.
The appellant challenged the search by a motion to suppress the evidence which the lower court denied after a hearing. The appellant thereupon withdrew his not guilty plea and tendered a plea of nolo contendere to the charge of possession of amphetamine, preserving the search issue for appeal. He now appeals his five year prison sentence on the basis of an alleged illegal search.
At the outset this Court wishes to acknowledge a prevalent lay criticism of this country's judicial system. It is the common belief among some segments of the public that judges are irresponsibly releasing hardened criminals on the streets on the basis of mere "technicalities". The belief, unfortunately, is partially correct: Courts are sometimes forced to overturn the conviction of persons who are obviously guilty. Such occurrences are always frustrating and the source of no satisfaction. But it is not correct to say that such releases are based on "mere technicalities". They are instead based upon the law. The constitution and statutes are, indeed, nothing more than compilations of technicalities.
The Fourth Amendment right against warrantless searches and seizures is no more a technicality than the First Amendment's guarantees of freedom of speech and freedom of religion. Any time a court ignores the constitutional rights of a person, no matter how guilty that person appears to be, the whole system is destroyed. Were courts to ignore the constitutional *852 rights of "guilty" persons, then the chances of an "innocent" person's constitutional rights being violated become infinitely greater. We must forever bear in mind the precious counterstone of the American system of jurisprudence, the presumption of innocence. No person is guilty under our system until proven so. Once the constitutional rights of the "guilty" are ignored, the constitutional rights of the "innocent" no longer exist. However distasteful the process of releasing a criminal may be, safeguarding the constitutional rights of all persons has been and must continue to be one of the most essential functions of all courts.
The Constitutional right involved in this case is the Fourth Amendment to the United States Constitution. That amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The foregoing principle is reiterated in Florida's Constitution, Article I, Sec. 12.
In the instant case, it is perfectly obvious that the defendant is guilty of the possession of controlled substances, but it is also equally obvious that his rights were violated, completely ignored, by the police whose inexcusable actions were approved by the lower court. The lower court apparently justifies the warrantless search on one of two theories: Search incident to a valid arrest or an emergency search. The record, however, reveals that neither exception to the warrant requirement is present in this case. The statement of Officer Taylor belies the assertion that the search was made incident to a lawful arrest. Officer Taylor frankly admitted that the arrest was not made until the entire search was completed.
We also refuse to accept the State's contention that the circumstances constituted an emergency sufficient to justify a warrantless search. The alleged emergency is based on the officers' alleged fears that the appellant would have time to be warned of his impending arrest and destroy the marked money during the five hour period in which the officers would be attempting to secure a search warrant. Such a speculative fear is not enough to overcome the strong presumption of invalidity that a warrantless search carries with it. Coolidge v. New Hamphire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971): Nor is it sufficient basis for suspension of constitutional rights.
Further, we are appalled at the officers' assertion that it would take three to five hours to secure a search warrant. Even taking the assertion at face value, there is no excuse for there to have been such a delay. We take judicial notice of the fact that there are presently assigned to the Fourth Judicial Circuit twenty-one (21) Circuit Judges, most of whom are in Duval County. F.S.A. § 26.031(d). Inasmuch as appellant's arrest was obviously part of a substantial well-planned drug "bust", the police should have had a judge at hand for the consideration of search warrant applications, or at least had one on call. In any event, the record does not support an "emergency" exception to the constitutional requirement for a search warrant.
We are thus confronted with a situation where a man and his wife are suddenly awakened by a sharp knock on their door at 3:00 a.m. and are forced to submit to a warrantless search of their home conducted by men dressed in plain clothes claiming to be sheriff's officers. This type of search is reminiscent of the Gestapo and the Russian KGB. Courts in this country never have permitted, and hopefully never will knowingly permit, such searches to occur in the United States.
We are not seeking to make the burdens of the police, already great, any heavier *853 than they are at present. We well recognize that the responsibilities and duties of all policemen are extremely complicated and difficult to perform. More and more, this State's law enforcement officers are conscientiously and successfully assuming their responsibilities. All that we are saying in this opinion is that the officers involved in this case failed in fulfilling the fundamental and simple requirement of obtaining a search warrant.
As mentioned in the first part of this opinion, we are frustrated by the fact that the appellant is guilty and that if the police had followed rudimentary procedure, the appellant would have been punished. We are now compelled to reverse his conviction because of the actions of the officers involved and because the lower court sanctioned those actions. The motion to suppress should have been granted.
Accordingly, the judgment and sentence appealed are reversed and the case is remanded for a new trial.
JOHNSON, Acting C.J., BOYER, J., and STOKES, ROBERT G., Associate Judge, concur.