319 So.2d 629 (1975)
James Michael FERRARA, Appellant,
v.
STATE of Florida, Appellee.
No. X-125.
District Court of Appeal of Florida, First District.
October 10, 1975.
*630 Donald G. Nichols, Dawson, Galant, Maddox, Sulik & Nichols, Jacksonville, for appellant.
Robert L. Shevin, Atty. Gen., and Gerald L. Knight, Asst. Atty. Gen., for appellee.
SMITH, Judge.
Ferrara appeals from judgments and consecutive sentences of imprisonment entered upon his pleas of nolo contendere, reserving the right of appeal, to two charges of knowing possession of controlled substances in violation of § 893.13, F.S. 1973. The pleas were entered after the trial court denied Ferrara's motion to suppress as evidence the cocaine which Jacksonville vice squad agents searched for and seized in Ferrara's apartment on the night of his arrest on another charge of selling cocaine to Ms. Gail Wells.
Although the trial court made no explicit findings in support of its order denying the motion to suppress, the State offers two alternative hypotheses justifying the search and seizure: first, that the warrantless search was required by the exigencies of time in that, after Ferrara's arrest and during the time necessary to obtain a warrant, the cocaine might well have been destroyed or secreted by friends or companions of Ferrara in or having access to his apartment; and second, that Ferrara consented to the search.
In the officers' search of the Wells home, pursuant to warrant, they found cocaine which Ms. Wells stated she purchased from appellant Ferrara, who she said had more of the same at his beach apartment. In the course of the proceedings at the Wells home, appellant telephoned and spoke unknowingly to one of the officers. He later arrived by automobile with three companions, entered the home alone, was arrested on the strength of Ms. Wells' accusation and was advised by officer Don Taylor:
"Our conversation to Mr. Ferrara was to the extent that he was under arrest and that we felt like there was possibly a large quantity of drugs in his apartment down at the beach and our intention was to go down there and search his apartment. So, we kept him aware of just what we were going to do."
The law officers, with Ferrara under arrest, then left the Wells home and departed for the beach in a patrol car, following another patrol car which was guided to Ferrara's apartment, at the request of an officer, by a woman who had accompanied Ferrara to the Wells home. The officers entered Ferrara's apartment with Ferrara's key, searched the place and found the cocaine in a footlocker upstairs.
In reviewing the trial court's order denying Ferrara's motion to suppress the evidence, we give credence to officer Taylor's testimony that he warned Ferrara upon his arrest as required by Miranda v. Arizona, *631 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that Ferrara told Taylor he had cocaine in his apartment while riding toward the beach in the police car, that at the apartment door Ferrara voluntarily produced a key to it and that, inside, Ferrara led the officers to the footlocker containing the cocaine. For present purposes, we disregard Ferrara's testimony denying the admission and contradicting officer Taylor's testimony.
We reject as groundless speculation the State's contention that the warrantless search was required by the exigencies of time. Hannigan v. State, 307 So.2d 850 (Fla.App. 1st, 1975). There is no evidence that anyone other than Ferrara had access to Ferrara's apartment, no evidence that his companions in the car  including a secretary employed by the State Attorney  knew of or had the slightest inclination to destroy or secrete the cocaine, and no evidence that any justifiable fears the police may have entertained could not have been allayed by surveilling the apartment while other officers obtained a search warrant. As we said in Hannigan, 307 So.2d 850, 852,
"The alleged emergency is based on the officers' alleged fears that the appellant would have time to be warned of his impending arrest and destroy the marked money during the five hour period in which the officers would be attempting to secure a search warrant. Such a speculative fear is not enough to overcome the strong presumption of invalidity that a warrantless search carries with it. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971): Nor is it sufficient basis for suspension of constitutional rights."
Contending alternatively that Ferrara consented to the search, the State's burden was to make that asserted fact "clearly shown by competent evidence" [Moss v. State, 247 So.2d 327, 328 (Fla. App. 1st, 1971)] of "the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973).
The evidence here is that the officers arrested Ferrara and decided to search his beach apartment on the basis of Ms. Wells' statements incriminating Ferrara and that, in order to apprise Ferrara "of just what we were going to do," the officers told him upon arrest of "our intention ... to go down there and search his apartment." The officers therefore resolved to search the Ferrara apartment and so indicated to appellant before officer Taylor had the conversation with Ferrara on which the State relies as evidence of consent. The group exodus from the Wells home, the officers' request that one of Ferrara's companions lead the patrol cars to Ferrara's apartment and the officers' purposeful departure for the beach with Ferrara restrained and in custody all confirm an intention to search the apartment irrespective of Ferrara's consent or the lack of it. Only after the search party was on its way did Ferrara advise officer Taylor, according to the State's disputed evidence, that he had an ounce of cocaine in his apartment. Only when the search party of six to eight officers arrived at Ferrara's door did Ferrara signify willingness to lead the group upstairs to the footlocker containing the cocaine.[1]
Considering the totality of the circumstances of this search, we conclude that the State failed to prove that the officers entered and searched Ferrara's apartment as a result of his "essentially free and unconstrained choice." Schneckloth v. Bustamonte, 412 U.S. at 225, 93 S.Ct. 2041, quoting Culombe v. Connecticut, 367 U.S. 568, *632 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037. To postulate that Ferrara was free to consent or not after the search party was underway to its destination is to suppose something contrary to human experience. Talavera v. State, 186 So.2d 811 (Fla.App. 2nd, 1966). It appears rather that Ferrara, who previously had been arrested only for drunkenness on New Year's Eve, merely submitted to the officers' claim of lawful authority to do what they set out to do irrespective of appellant's wishes and without a warrant. Such acquiescence is not equivalent to consent. Schneckloth v. Bustamonte, 412 U.S. at 233, 93 S.Ct. 2041; Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921); Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); Pekar v. United States, 315 F.2d 319 (5th Cir.1963).
The incriminating evidence having been produced by an unlawful search and seizure, the judgments of conviction are
Reversed.
McCORD, Acting C.J., and MILLS, J., concur.
NOTES
[1] Ferrara was convicted and sentenced on two counts, one charging knowing possession of cocaine and the other charging knowing possession of more than five grams of cannabis on the same day. We must assume, since the record does not clearly show it, that the cannabis was seized in the course of the search for cocaine in appellant's apartment.