## STATE OF FLORIDA v. MOOREHEAD
Case No. CAT83-12714-C
County Court, Volusia County
March 13, 1984

Keith Johnstone, for plaintiff.

Ron Kowalski, for defendant.

NORTON JOSEPHSON, County Judge.

This cause came on to be heard on the defendant's Motion to Suppress based upon the alleged illegal search of the defendant's premises. The facts in this case are as follows:

On December 14, 1983, two Daytona Beach detectives were surveilling the area of Ocean Avenue in Daytona Beach, Florida, a place known by the police where prostitutes commonly operate.

They observed the defendant get into a pick-up truck driven by one Jackson Kent Foster in the 100 block of North Ocean Avenue. They followed the pair to the Stardust Motel and watched them enter room number two.

One of the detectives, Officer Jones went to the back of the motel and peered through holes in the curtain to room number two while Detective Powers waited in front. Detective Jones observed the defendant performing oral sex on Mr. Foster. Detective Jones described the holes as the size of a cigarette burn. When the pair left the room, the detectives approached them, advised them of their rights and confronted them with what Detective Jones saw through the curtains. Mr. Foster admitted to Detective Powers that he paid the defendant $15.00 for sex, whereupon the detective arrested Mr. Foster and the defendant for violation of Section 796.07 Florida Statutes, the prostitution statute.

The defendant contends that the action of Detective Jones in peering into room number two through closed curtains was a violation of her fourth amendment rights, in that she had a reasonable expectation of privacy and therefore entitled to be free from unreasonable government intrusion.

In the case of a misdemeanor which prostitution is, in order to make an arrest without a warrant the officer making the arrest must have more than just probable cause, the misdemeanor must be committed in his presence. (Section 901.15 Florida Statutes; *Kirby v. State*, 217 So.2d 619; *Ross v. State* 215 So.2d 33; *Phillips v. State* 314 So.2d 619)

All the elements of the offense must occur in the officer's presence. (*T.L.M. v. State* 371 So.2d 688)

At no time during the scenario between the two detectives and the defendant when she first entered the truck of Mr. Foster until they entered room two of the Stardust Motel was the crime of prostitution committed in the presence of the police officers. All they had was "high suspicion" as testified by Detective Jones.

Several federal cases have held that looking into a bedroom window without probable cause is in violation of one's fourth amendment rights. (*Brock v. United States* Fifth Cir 1955, 223 F(2) 681; *State of Texas v. Gonzales* Fifth Cir 1968 388 F(2) 145)

Florida has followed this law in (*Olivera v. State* 315 So.2d 487) where the Second District Court of Appeals reversed the lower court's denial of a motion to suppress where a police officer left the sidewalk to stand on a lawn and observe and heard activities in an apartment, through a window. The Court held that the knowledge that the police officer obtained in such a manner was tainted and could not search the apartment or arrest the occupants.

The State argues however, that this was a motel and a guest at a motel does not have the same expectation of privacy as a person in a private home.

The case of *Ponce v. Craven* 9th Cir. 1969 409 Fed (2) 621, at first blush seems to sustain the State's position. In that case the police were standing in a motel parking lot looking through the bathroom window of the defendant's motel room and observed a man washing out a hypodermic needle. The court concluded that the evidence subsequently seized was admissible because the police officer was in a parking lot legally and because the defendant's reliance on privacy was not reasonable, in that he failed to draw the curtains.

In the case at bar, Detective Jones was in the back of the motel and the defendant had drawn the curtains.

The back of the motel is different than a parking lot. In *Fixel v. Wainwright* 5th Cir. 1974 F.(2) 480, the Court said that the backyard of a four unit apartment building was not a common passageway normally used by the tenants for gaining access to apartments.

Neither was the back of the Stardust Motel a common passageway for guests of the motel.

Furthermore, the defendant drew her curtains to room number two. This was an actual demonstration on her part of her expectation of privacy.

In *State v. Rickard* 420 So.2d 303 the Supreme Court of Florida held that society will honor a persons objective manifested expectations of privacy. (See also *State v. Morsman* 394 So.2d 409)

The Court therefore finds that the intrusion upon the defendant's privacy was illegal and all that flowed from it was essentially illegal and thus the fruits of the search, that is i.e. the observation by the police officer and the confession of Mr. Foster cannot be used against this defendant. The Motion to Suppress is therefore granted.

I am sure that some lay people will criticize this decision. However, I am fortified in my resolve to follow the law and uphold the Constitution of the United States. I am further fortified when the First District Court of Appeals in case of *Hannigan v. State* 307 So.2d 850 in a per curiam opinion said:

"At the outset this Court wishes to acknowledge a prevalent lay criticism of this country's judicial system. It is the common belief among some segments of the public that judges are irresponsibly releasing hardened criminals on the streets on the basis of mere "technicalities". The belief, unfortunately, is partially correct. Courts are sometimes forced to overturn the conviction of persons who are obviously guilty. Such occurances are always frustrating and the source of no satisfaction. But it is not correct to say that such releases are based on "mere technicalities". They are instead based upon the law. The constitution and statutes are, indeed, nothing more than compilations of technicalities.

The Fourth Amendment right against warrantless searches and seizures is no more a technicality than the First Amendment's guarantees of freedom of speech and freedom of religion. Any time a court ignores the constitutional rights of a person,

no matter how guilty that person appears to be, the whole system is destroyed. Were courts to ignore the constitutional rights of "guilty" persons, then the chances of an "innocent" person's constitutional rights being violated become infinitely greater. We must forever bear in mind the precious counterstone of the American system of jurisprudence, the presumption of innocence. No person is guilty under our system until proven so. Once the constitutional rights of the "guilty" are ignored, the constitutional rights of the "innocent" no longer exist. However distasteful the process of releasing a criminal may be, safeguarding the constitutional rights of all persons has been and must continue to be one of the most essential functions of all courts".

Melvin Belli, the world renowned trial lawyer said it more succinctly, when he said:

"If the constitutional guarantees are to protect us all, they have to protect even the worst of us."