309 So.2d 12 (1975)
STATE of Florida, Appellant,
v.
Mark ROMAN, Appellee.
No. 73-382.
District Court of Appeal of Florida, Fourth District.
February 14, 1975.
Rehearing Denied March 26, 1975.
Robert L. Shevin, Atty. Gen., Tallahassee, Nelson E. Bailey and Stephen R. Koons, Asst. Attys. Gen., West Palm Beach, for appellant.
James M. Russ of Law Offices of James M. Russ, Orlando, for appellee.
SCHWARTZ, ALAN R., Associate Judge.
Once again, this Court is presented with problems arising from the application *13 of the "knock-and-announce" statutes, F.S. § 901.19(1); F.S. § 933.09; see the leading case of Benefield v. State, Fla. 1964, 160 So.2d 706. The trial judge, on disputed evidence, determined that the arresting City of Winter Park police officer had not knocked or announced his authority prior to entering the defendant Roman's Rollins College dormitory room for the purpose of arresting him, without a warrant, for possession and delivery of cannabis, and granted Roman's motion to suppress the marijuana which had been seized from the room as a result of the arrest, under F.S. § 901.19(1) and "pursuant to the principles as [stated] in State v. Collier, Fla.App. 1973, 270 So.2d 451." The state appeals. We conclude that the order of suppression, which impliedly but effectively rejected the applicability of any of the exceptions to the knock-and-announce statute argued by the state, is supported both by the record on appeal and the applicable law, and accordingly affirm the decision below.
Much of what occurred at McKean Hall, on the Rollins campus on the evening of January 29, 1973 appears without dispute in the record. At about 10:00 that night, two armed, plain clothes Winter Park police officers, Beckstrom and Sickler, along with a young, unarmed police "cadet," Linda Spencer, went to McKean to execute search warrants and capiases on two students, "Charlie and Cliff," who lived in Room No. 1. No one answered their knock on that door, so they went to Room No. 2, where the defendant Roman, and Steve David, both freshmen at Rollins, lived. Roman responded to the knock on his door and went off to try to find Charlie and Cliff for the officers. When he returned without them shortly thereafter Roman asked the officers why they were looking for them. Beckstrom replied, to "attempt to buy some dope." Roman said that he had some for sale and asked Beckstrom, Sickler and Spencer into the room.
In the room, watching television, were Roman's roommate, David and another Rollins freshman, both of whom were, as was Roman, unarmed. The room had no toilet facilities, or any type of drain, and but two exits, the door through which the officers came in from the hallway (and through which Beckstrom was shortly to return), and a window which was closed and screened. Once there, Roman and Beckstrom began negotiations for the sale and purchase of a quantity of marijuana which the defendant produced from a drawer. If Beckstrom had arrested Roman on the spot and subsequently seized the cannabis (as he had the undoubted right to do since Roman was obviously in the process of committing felonies in his presence), there would have been no question concerning the inapplicability of the knock-and-announce requirements prior to the officers' initial, invited entry into the room. See Koptyra v. State, Fla.App. 1965, 172 So.2d 628; Powers v. State, Fla.App. 1973, 271 So.2d 462; State v. Yenke, Fla.App. 1974, 288 So.2d 531. For unaccountable reasons, perhaps relating to an entirely incorrect belief that money had to change hands in order to constitute a crime, perhaps because Beckstrom wanted the company of more armed officers (and representatives of the press who apparently were waiting outside the dormitory), however, he did not. After arriving at a price of $20.00 Beckstrom said he had to go out to his car to get the money. He then laid the "lid" of cannabis they were discussing on a table and departed, leaving Officer Sickler (armed and standing by the window) and Cadet Spencer behind in the room.
A few moments later, he returned, accompanied by two other officers, all of them with guns drawn. Although Beckstrom testified he knocked before entering, neither officer in the room, and none of the students there, heard such a knock (or any announcement of authority as required by F.S. § 901.19(1); see Benefield v. State, supra). Thus, there can be no doubt that the record supports the trial judge's ruling that no knock occurred. Cameron v. State, Fla.App. 1959, 112 So.2d 864. Proceeding, then, without having knocked *14 or announced, Beckstrom, with the other officers, opened the door, barged into the room and simultaneously arrested Roman, and seized the cannabis which had remained there during Beckstrom's absence. Thereafter, with Roman handcuffed and at gun point, the officers first searched his desk and dresser, discovering further contraband. Then, after Beckstrom told the defendant that if he revealed the location of still other marijuana, he would not be charged further, Roman did so and additional cannabis was seized.
As the First District said in Cameron v. State, supra, at 112 So.2d 864:
"On a motion to suppress evidence the trial judge is trier of both law and fact. His conclusions come to this court clothed with a presumption of correctness and in testing the accuracy of his conclusions on questions of fact we should interpret the evidence and all reasonable inferences and deductions capable of being drawn therefrom in the light most favorable to sustain those conclusions."
Viewing the complete record before us in this manner, it is apparent that it wholly sustains the order below. The State's primary contentions here  that Beckstrom actually knocked before entering; or that, if he did not, he was not required to do so because he reasonably feared either for the safety of the officers in the room or that the contraband might be disposed of prior to his entry, or both  could properly have been made only to the trial judge. We cannot disturb his rejection of those claims on appeal.
We have already noted the clear, in fact overwhelming evidence, which supports the finding that Beckstrom did not in fact knock before entering. And the record just as clearly supports the rejection of the state's contentions that any exception to the statutory requirement existed as a matter of fact or law. While Beckstrom said at the hearing that he feared for the safety of Sickler and Spencer, the trial judge could properly have concluded either that this belief did not in fact exist or that no such belief was, as the Benefield "exception," at 160 So.2d 710, requires "... justified ..." by the existing circumstances. There was in fact no reason whatever to believe that either officer within the room, one of whom carried the only weapon there, was, as Benefield says, "in imminent peril of bodily harm." And while Beckstrom also said that he was "worried" about the possibility that the contraband might be disposed of, see State v. Kelly, Fla. 1973, 287 So.2d 13, the trial court  again  could either have disbelieved this profession or concluded that there were no "reasonable grounds to believe the marijuana within the [room] would be immediately destroyed if [he] announced [his] presence." Earman v. State, Fla. 1972, 265 So.2d 695, 697; State v. Collier, supra, at 270 So.2d 451, cited by the trial judge (no evidence of concern or "reasonable grounds to be concerned about the destruction of evidence"). In fact, the occupants of a room which had no drain and only two exits, at both of which armed police officers were standing, had no opportunity at all to get rid of the seized marijuana prior to Beckstrom's entry.[1] As in the Collier case, we cannot
"... hold the trial judge in error for failing to find the existence of such exceptional circumstances that would justify non-compliance with the statute."
Again, as in Collier, the state argues that Beckstrom's re-entry into the dormitory room was, in effect, consented to by Roman, since he knew that Beckstrom was going to return after his first, *15 invited entrance. We agree with the trial court, however, that the holding in Collier is dispositive of this issue, as well, to the contrary of the state's position. We held there, at 270 So.2d 454-455:
"At oral argument the state contended that because Officer Hill was invited into the apartment as a social guest, he had the right, after leaving and without further formality, to reenter the apartment with his fellow officers for purposes of executing the search warrant. This argument really begs the question because it assumes, without demonstrating, that the statute in question has an exception which covers such an entry. The statute does not have such exception and one cannot reasonably be found in the implication of the statute. It seems rather clear that Officer Hill's first entry into the apartment was authorized by the Colliers, but that such authorization did not relieve Officer Hill from the burdens of the statute after he left and returned not in the capacity of a social guest, but in his official capacity for the purpose of executing a search warrant."
Nor is the case controlled by our recent decision in State v. Yenke, Fla.App. 1974, 288 So.2d 531, 532. In that case, the evidence in question had been voluntarily handed to an officer (who was in the position of Sickler in this case), prior and unrelated to the unannounced return of another officer (who was like Beckstrom here) with a search warrant. The Court held that the seizure was not "the result of a search" which followed an improper entry. In this case, in contrast, there was no seizure of marijuana at all  not even of the quantity which Beckstrom laid on the table, much less of that secured upon a search of the room  until, and because of Beckstrom and the other officers' return and warrantless arrest of Roman for the commission of a felony. Thus, the statement of Yenke at 288 So.2d 532, to the effect that
"Had agent Riffle been involved in executing the search warrant when he returned to the house we would have a different factual situation requiring the application of the rule of State v. Collier, Fla.App. 1970, 270 So.2d 451."[2]
is directly applicable.
For essentially the same reasons, neither Koptyra v. State, supra, nor Powers v. State, supra, is determinative. In each of those cases, the entry which resulted in the seizure was consented to by the defendant.[3] As in Yenke, the seizure was not the result of an entry to which the "knock-and-announce" requirements applied. In this case, the seizures occurred only after and because of Beckstrom's re-entry which was subject to those requirements, but which did not comply with them. See also Urquhart v. State, Fla.App. 1968, 211 So.2d 79.[4]
Affirmed.
CROSS, J., concurs.
DOWNEY, J., dissents.
DOWNEY, Judge (dissenting).
I dissent upon authority of State v. Yenke, Fla.App. 1974, 288 So.2d 531.
NOTES
[1] In resolving these issues, the trial judge may well have been impressed by the fact that, although the court didn't believe him, Beckstrom himself said that he knocked prior to entry. Apparently, then, according to his own avowed actions, he did not think that a knock or an announcement would have led to the dire results he said at the hearing on the motion to suppress that he feared when he entered the room.
[2] The "knock-and-announce" rules applicable under F.S. § 901.19(1) to a search which follows even a justified arrest without a warrant, see Benefield v. State, supra, are identical to those involved, under F.S. § 933.09, when, as in Collier and Yenke, a seizure follows the execution of a search warrant.
[3] See also the discussion of the Koptyra case in Judge Cross' dissenting opinion in Yenke, at 288 So.2d 534.
[4] Our disposition of the case makes it unnecessary to consider Roman's alternative contentions that the search of his dresser after the arrest was not authorized under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); and that his revelation of the location of additional marijuana after a promise of leniency did not constitute a voluntary consent, pursuant to the holdings in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and Earman v. State, supra.