398 So.2d 475 (1981)
The STATE of Florida, Appellant,
v.
Noel STEFFANI, Jr., Appellee.
No. 80-933.
District Court of Appeal of Florida, Third District.
May 12, 1981.
Janet Reno, State Atty. and Ira N. Loewy, Asst. State Atty., and Bruce H. Lehr, Legal Intern, for appellant.
Paul Morris, Miami, for appellee.
Before SCHWARTZ, NESBITT and FERGUSON, JJ.
SCHWARTZ, Judge.
This appeal by the state from an order of suppression presents the question of whether the "knock and announce" statute and Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) apply to the entry into a suspect's home of police officers in the company of an undercover agent who had previously been invited there. We join the fourth district in its recently expressed conclusions that they do not. Therefore, in accordance with the trial judge's stated wishes, but not with his ruling, the order under review will be reversed.
The comprehensive decision rendered below after a full evidentiary hearing sets forth the court's factual findings and legal determination as follows:
Undercover agents, Guilfoyle and Houck, were invited by the Defendant, Noel Steffani, to his home for the purpose of consummating an illegal drug sale on the evening of July 6, 1979. After the usual amenities in a transaction of this nature, the Defendant escorted the agents to a bedroom, where he displayed various controlled substances, including marijuana, cocaine and assorted tablets. After agreeing upon a price, Agent Houck went outside the house, ostensibly to obtain the money for payment. When the agent returned, he was followed (on a pre-arranged signal) by various back-up teams of officers with guns drawn. None of these officers knocked, or announced their presence, or performed the requirements *476 of the `knock and announce law', § 901.19(1), Fla. Stat. The back-up officers proceeded to arrest the Defendant and to confiscate the illegal contraband. The undercover agents continued for some period to play the ruse, and, in fact, were initially frisked and detained.[1] Some time later, their true identity was revealed to the Defendant.
"[1] Note: Throughout these proceedings, the State has contended that the undercover agents were the arresting officers, notwithstanding the initial ruse, and points to the fact that Guilfoyle and Houck signed the arrest form. This Court does not agree."
In light of the facts of this case, this Court is compelled to grant the Motion to Suppress under the recent authority of Hansen v. State, 372 So.2d 1003 (Fla. 4th DCA 1979), and State v. Roman, 309 So.2d 12 (Fla. 4th DCA 1975).[[1]]
The applicability of Section 901.19(1), Fla. Stat. (1979) to variations of the "returning undercover officer" situation exemplified by this case has been the subject of numerous decisions  almost all of them, unaccountably enough, of the fourth district court of appeal. These cases had clearly established that the statute is not causally implicated and noncompliance therefore does not require suppression when  unlike the present situation  an arrest had been made or the contraband seized inside the premises, prior and unrelated to the unannounced return of the undercover officer.[2] *477 Koptyra v. State, 172 So.2d 628 (Fla. 2d DCA 1965); Powers v. State, 271 So.2d 462 (Fla. 1st DCA 1973); State v. Yenke, 288 So.2d 531 (Fla. 4th DCA 1974), cert. denied, 295 So.2d 303 (Fla. 1974); State v. Farrington, 338 So.2d 81 (Fla. 4th DCA 1976); Preces v. State, 378 So.2d 77 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1117 (Fla. 1980), cert. denied, ___ U.S. ___, 101 S.Ct. 569, 66 L.Ed.2d 471 (1980). The rule was otherwise, however, when, after and as a result of a reentry by the initially invited officer, the arrest or seizure was effected either (a) by that particular officer, State v. Collier 270 So.2d 451 (Fla. 4th DCA 1972), followed in State v. Roman, 309 So.2d 12 (Fla. 4th DCA 1975), cert. dismissed, 312 So.2d 761 (Fla. 1975); see also, Urquhart v. State, 211 So.2d 79 (Fla. 2d DCA 1968), or (b) a fortiori, by uninvited accompanying uniformed officers  as occurred in this case. Hansen v. State, 372 So.2d 1003 (Fla. 4th DCA 1979).
In a two-step process, however, the fourth district has now overruled these latter holdings. Lawrence v. State, 388 So.2d 1250 (Fla. 4th DCA 1980), held that the original invitation to the disguised officer applied to his own anticipated return, even though he had left on a pretext and was reentering for the wholly unanticipated purpose of arresting those with whom he had been dealing. At 388 So.2d 1252, the court stated:
[W]e hold, as we did concerning Officer Riffle in Yenke, that Ortenzo had implied consent to reenter the house. Appellants were attempting to sell contraband; the deal had been agreed upon; and Ortenzo ostensibly went outside to get the money. Obviously, appellants wanted him to return to complete the deal. Thus, to require him to knock and announce would be an absurd legalistic construction of the knock and announce statute. To the extent State v. Collier, 270 So.2d 451 (Fla. 4th DCA 1972), holds to the contrary, we recede from it.[[3]]
The court reiterated this holding in State v. Schwartz, 398 So.2d 460 (Fla. 4th DCA 1981):
We find that the knock and announce statute does not apply in this case because Gibbons had an implied invitation to return to the residence. See, Lawrence v. State, supra, at 1252. To the extent that the above cases[[4]] hold to the contrary, we recede from them.
More significantly as to this case, Schwartz expressly receded from Hansen. Adopting the specially concurring opinion in Lawrence of Judge Anstead, who had himself authored Hansen a short time before, the court held that the presence of other never-invited *478 officers, along with the undercover man, does not affect the inapplicability of the statute. The court held, in language which controls this case:
Fourth Amendment privacy considerations are relevant in construing the knock and announce statute. Accordingly we adopt the well reasoned, concurring opinion by Judge Anstead in Lawrence, supra.

I agree completely with Judge Downey's opinion. This court has had substantial difficulty reconciling several previous decisions we have rendered involving similar factual situations. See Hansen v. State, 372 So.2d 1003 (Fla. 4th DCA 1979). In my view once the defendants admitted the undercover police officers to their premises and proceeded to openly engage in criminal conduct in the officers' presence they could not thereafter claim any violation of their reasonable expectation of privacy under the Fourth Amendment if one of the officers left and returned, alone or with other officers, and effected their arrest. Under such circumstances the defendants have waived any privacy claim by disclosing the contraband and engaging in criminal conduct in the presence of the officers, who could have effected the arrest of the defendants inside the premises at any time. The fact that one officer left and returned on a ruse may have benefited the officers by allowing them the added protection of other armed officers to assist in the arrest, but such conduct did not constitute an additional intrusion into the defendants' premises since such intrusion had already been lawfully accomplished by the undercover officers. I think the officers' conduct in this case was eminently reasonable and would recede from any implication to the contrary contained in Hansen v. State, supra, and the cases cited therein. Also see Koptyra v. State, 172 So.2d 628 (Fla. 2nd DCA 1965).

Lawrence, supra, at 1253.
An officer who enters a defendant's premises lawfully and who temporarily leaves the premises solely for the purpose of obtaining the funds to consummate a transaction has an implied invitation to return without the necessity of knocking and announcing his identity and purpose. The fact that he enlists the aid of other officers does no injustice to the statute or the constitution. It neither adds to, nor detracts from, the reasonableness of the reentry.
Furthermore, the occupants were expecting the return of the police officer with the money for the transaction. Thus, there could be no danger of violence to the police or the occupants from an unexpected intrusion.
We agree with and adopt this position. Since Steffani would have had no constitutional[5] or statutory[6] complaint had Houck or Guilfoyle initially arrested him and seized his drugs, it should make no constitutional or statutory difference to him either that these events occurred a few minutes later or that they were formally accomplished by other officers summoned solely for the salutary purpose of protecting the undercover men. In sum, we think, with the fourth district, that the consensual relinquishment of the defendant's privacy involved in inviting the undercover officers into his home extends not only to their own contemplated reentry but also to the causally and temporally closely-related actions of other officers who act at their direction and must therefore be deemed to stand in their shoes.[7] See, Section 901.18, Florida Statutes (1979) ("A peace officer making a lawful arrest may command the aid of persons he deems necessary to make the arrest... . *479 A person commanded to aid a peace officer shall have the same authority to arrest as that peace officer..."); Kirby v. State, 217 So.2d 619, 621 (Fla. 4th DCA 1969) ("Gulbrand, having been summoned under F.S. 1967, Section 901.18, F.S.A., had the right to do whatever the summoning officer himself might lawfully do. 6A C.J.S. Arrest § 16. Since Deputy Bowling could lawfully make the arrest, Deputy Gulbrand could likewise and his duty was not limited to merely assisting another deputy in making the arrest."); see also, United States v. Ashley, 569 F.2d 975 (5th Cir.1978), cert. denied, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1979); United States v. Heiden, 508 F.2d 898 (9th Cir.1974); State v. Rebozo, 265 So.2d 706 (Fla. 3d DCA 1972), and cases cited. By the same token that fruit of the poisonous tree is toxic, produce from the unspoiled one is completely edible.
Upon the same general analysis, we also reject the appellee's claim that Payton v. New York, supra, requires affirmance. Again, we agree with the Schwartz decision that, in Payton
[t]he United States Supreme Court held that the Fourth Amendment prohibits police from entering a suspect's home without a warrant and without consent to effect an arrest of the suspect. The implied invitation here distinguishes this case from Payton. [e.o.]
Reversed.[8]
NOTES
[1] The trial court went on to state:

However, this Court wishes to express its reluctance to do so. This Court solicits the State to seek review of this Order, and establish precedent in this District which is contrary. In that regard, this court would point out the older precedent of State v. Collier, 270 So.2d 451 (Fla. 4th DCA 1972); and, Koptyra v. State, 172 So.2d 628, 631-632 (Fla. 2nd DCA 1965), which tend to support the State's position.
In the present case, it is indeed ironic and unfortunate that if the undercover agents had arrested the Defendant when the contraband was first shown in the bedroom, the arrest and seizure would have been constitutional. State v. Ashby, 245 So.2d 225 (Fla. 1971). Unfortunately, here, the arrest and seizure were not made by Houck and Guilfoyle, but by other officers, who entered the home of Defendant on a pre-arranged signal after Houck went outside.[2]
[2] The State has consistently urged that the Defendant lost his Fourth Amendment protection by inviting the undercover agents into his home, thereby transforming his premises into a commercial drug center. Lewis v. U.S., 385 U.S. 206 [87 S.Ct. 424, 17 L.Ed.2d 312] (1966) and, Preces v. State, 378 So.2d 77 (Fla. 3rd DCA 1979). Certainly, this premise is true. Unfortunately, this implied waiver did not extend to the arresting officers, who were not invited into his home. At least, this is the holding of Hansen v. State, supra, at 1005.] These officers did not follow the prerequisites of the "knock and announce law", and thus the materials must be suppressed, in light of Hansen v. State, supra; and, State v. Roman, supra.
This Court, most respectfully, disagrees with these decisions when applied to the facts of this case. As the Second District Court correctly reasoned in Koptyra v. State, supra, [172 So.2d] at 631-632:
`The method of entry here did not involve a breaking within the meaning of Section 901.19, Fla.Stats., F.S.A., as construed in Benefield. By concealing his identity and purpose the inspector gained peaceable entry. As he was arresting Salute, the assisting officers entered through the open door and arrested the defendant and Pamela Hardin. There was no forcible entry. The entry was gained peaceably by ruse. Similar methods of entry have been upheld. The entry was not under color of office as in Collins v. State [Fla.App., 143 So.2d 700]. The Defendant does not contend and it does not appear that the search exceeded the recognized bounds of one incidental to an arrest. Consequently, the evidence complained of was properly admitted.'
This reasoning should be extended to the facts of this case. The prerequisites of `knock and announce' should not apply to a situation where an invited officer returns to the home of the Defendant with accompanying officers presumably needed to provide additional protection to the undercover agents.
We observe that the lower court's opinion is admirable, indeed, in at least two separate respects. It reflects a conscientious determination, in the absence of controlling authority of this court or the supreme court, to follow decisions of another district, despite the trial judge's personal disagreement with them. See Holmes v. Blazer Financial Services, Inc., 369 So.2d 987 (Fla. 4th DCA 1979); State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976). Second, with amazing prescience, it contains legal reasoning which is virtually identical to that adopted both by the fourth district in subsequently overruling those very cases and by this court as well.
[2] The state argues that this restrictive rule is applicable here because Guilfoyle, the officer who remained inside, obtained "constructive possession" of the narcotics. We cannot agree. The contention is unacceptably contrary to the factual conclusions of the trial court, see State v. Nova, 361 So.2d 411 (Fla. 1978), which specifically found that "the arrest and seizure were not made by Houck and Guilfoyle, but by other officers, who entered the home ... after Houck went outside." See note 1, supra. More importantly, we cannot agree with the view, as stated in Lawrence v. State, 388 So.2d 1250 (Fla. 4th DCA 1980) (alternative holding), that a police seizure may be accomplished by mere constructive possession. Apart from Lawrence, with which we disagree on this point, we know of no authority which suggests that, for constitutional purposes, the "seizure" of a tangible object may involve anything less than an act of taking actual and physical control. See Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) ("a seizure contemplates a forcible dispossession of the owner"); 1 La Fave, Search and Seizure § 2.1 (1978).
[3] The thus-overruled holding to this effect in Collier was that "[t]he statute does not have such exception and one cannot reasonably be found in the implication of the statute." 270 So.2d 454. This is really no more than an unconvincing statement of the result. Although this writer was required to follow Collier while sitting as an associate judge of the fourth district in State v. Roman, supra, we much prefer the reasoning in Lawrence and Schwartz, infra, that the application of the statute should not depend upon the particular number or sequence of entries effected by a particular officer. Since a disguised officer is obviously not required to knock and announce when he is first invited inside, State v. Ashby, 245 So.2d 225 (Fla. 1971); Preces v. State, supra, there is no reasonable basis for making him do so thereafter.
[4] The cases referred to are Hansen v. State, supra; State v. Roman, supra; State v. Yenke, supra; and State v. Collier, supra.
[5] Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), relied on in Preces v. State, supra.
[6] See note 3, supra.
[7] We emphasize that this is the extent of our holding in this case. We do not adopt the extreme position advocated by the state that the use of the defendant's premises as a place of illegal business effects a waiver of his right to challenge any and all subsequent police intrusions into his home.
[8] As in Lawrence, we have determined to certify this cause to the supreme court as one which involves questions of great public importance concerning the applicability of Sec. 901.19(1), Fla. Stat. (1979) and Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).