426 So.2d 1035 (1983)
STATE of Florida, Appellant,
v.
Katherine Ann CANTRELL, Appellee.
Nos. 81-775, 81-776.
District Court of Appeal of Florida, Second District.
January 19, 1983.
Rehearing Denied February 25, 1983.
*1036 Jim Smith, Atty. Gen., Tallahassee, and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellant.
J. Stanford Lifsey, Tampa, for appellee.
PER CURIAM.
In yet another variation of the drug buybust scenario, police officers made a warrantless entry into the defendant's home to arrest her. The trial judge quashed the arrest and suppressed evidence seized by the officers after their entry. The state appeals; we reverse.
The defendant telephoned a confidential informant of the police department and told him that she had cocaine for sale. At 3:00 on a Wednesday afternoon the confidential informant, accompanied by an undercover detective named Dial, went to the defendant's apartment to purchase the cocaine. Upon their arrival, the defendant told them that the cocaine was not there and that they should return at a later time after the defendant made a telephone call to them. Detective Dial subsequently received such a phone call and returned to the defendant's apartment with the confidential informant at 5:00 p.m. on the same day. The defendant invited the two inside her apartment where she withdrew two bags of cocaine from a tray under a stereo set and exhibited them. She placed the cocaine on a coffee table in front of a couch next to the stereo set and then sat down on the couch.
At this juncture, the confidential informant left the apartment for the ostensible purpose of getting the purchase money and weighing scales so that the transaction could be completed. Meanwhile, Detective Dial asked the defendant if he could check the rest of the apartment to make sure no one else was there, a customary safety precaution carried out by narcotics buyers and sellers. The defendant did not object and the officer's inspection revealed no other occupants. While making that inspection and out of the sight of the defendant, the officer pressed a hidden beeper which, by prearrangement with other police officers outside the apartment, signaled that he had observed the commission of a felony.
At this point, the confidential informant returned to the apartment. Although the defendant had asked the confidential informant to lock the door upon his return, he did not do so. The confidential informant handed the purchase money to Detective Dial, who began to count out the correct sum for the purchase. At that moment the outside police officers, without knocking or announcing their purpose, opened the door, entered the apartment, and placed the defendant under arrest. The officers seized the cocaine as well as a loaded handgun which was located on the floor near where the defendant was sitting.
Several police officers testified at the hearing on the defendant's motion to suppress, including Detective Dial, who was invited into the apartment, and those who later entered. All these officers are highly experienced narcotics bureau officers who commonly and frequently participate in undercover drug buys and had participated in scores of arrests not dissimilar to the one involved in the case before us. The testimony of these officers revealed that in several instances one or the other of them had either been involved in shoot-outs or had had weapons pointed at them during drug arrests. This possibility was particularly alarming in those cases where an undercover police officer was inside a residence, so that the officers did not announce their purpose in order to prevent potentially dangerous and violent incidents from criminal suspects located with the inside police officer. The officers all testified, understandably, that they proceeded to make these entries and arrests with caution and with a *1037 well-founded fear for their safety. As one officer put it, "Well, in my past experience, whenever you have money and dope together, there is always the possibility of a gun being there."
In suppressing the evidence, the trial judge reasoned that the police created any exigent circumstances which may have existed. Thus, he concluded that in entering the house the arresting officers had violated Florida's "knock and announce" law, section 901.19(1), Florida Statutes (1979). He expressly relied upon the case of Hansen v. State, 372 So.2d 1003 (Fla. 4th DCA 1979).
In Hansen, two undercover police officers gained entry to the appellant's dwelling by posing as potential purchasers of marijuana. By prearranged signal from one of the undercover officers, other officers entered the residence through an unlocked door and placed the defendants under arrest. A quantity of marijuana in plain view was seized incident to the arrest. Our sister court held that under section 901.19(1) the arresting officers could only enter the premises after knocking and announcing their authority and purpose. Since they failed to do so, the arrest and the ensuing seizure were deemed illegal.
However, in State v. Schwartz, 398 So.2d 460 (Fla. 4th DCA 1981), decided subsequent to the ruling entered below, the Fourth District Court of Appeal expressly receded from Hansen. In Schwartz, the defendant invited an undercover officer and a confidential informant into the defendant's home to arrange a purchase of illegal drugs. After agreeing upon the terms of the purchase, the officer and informant went outside ostensibly to obtain some money. They left the residence door ajar. Utilizing a prearranged signal, the officer returned along with two other officers to arrest the defendant and seize the contraband. The court held that the knock and announce statute was inapplicable because the undercover officer had an implied invitation to return to the residence. The fact that he enlisted the aid of other officers did not detract from the reasonableness of the reentry. See Koptyra v. State, 172 So.2d 628 (Fla. 2d DCA 1965), in which this court reached the same conclusion on similar facts.
The recent case of State v. Steffani, 398 So.2d 475 (Fla. 3d DCA 1981), is particularly instructive. Undercover agents Houck and Guilfoyle had been invited into Steffani's home for the purpose of consummating an illegal drug sale. After agreeing upon a price, Agent Houck went outside upon the pretense of obtaining money for the purchase. When Houck returned, he was followed on a prearranged signal by back-up teams of officers with guns drawn. None of these officers knocked or announced their presence. The back-up officers arrested Steffani and confiscated the illegal contraband. In reversing the order of suppression entered below, the court said:
Since Steffani would have had no constitutional or statutory complaint had Houck or Guilfoyle initially arrested him and seized his drugs, it should make no constitutional or statutory difference to him either that these events occurred a few minutes later or that they were formally accomplished by other officers summoned solely for the salutary purpose of protecting the undercover men. In sum, we think, with the fourth district, that the consensual relinquishment of the defendant's privacy involved in inviting the undercover officers into his home extends not only to their own contemplated reentry but also to the causally and temporally closely-related actions of other officers who act at their direction and must therefore be deemed to stand in their shoes. See, Section 901.18, Florida Statutes (1979) ("A peace officer making a lawful arrest may command the aid of persons he deems necessary to make the arrest... . A person commanded to aid a peace officer shall have the same authority to arrest as that peace officer ..."); ...
398 So.2d at 478-79 (footnotes omitted).
We find the rationale of State v. Steffani applicable to the instant case. The consensual relinquishment of the defendant's privacy involved in inviting Detective *1038 Dial into her home extended to the other officers summoned by him to assist in making an arrest for a felony committed in his presence. We do not believe that the short time interval between the return of the confidential informant and the arrival of the back-up officers vitiated the otherwise legal arrest. See also State v. Perry, 398 So.2d 959 (Fla. 4th DCA 1981), in which the court held that when a person invites undercover officers into his home to transact unlawful business, he waives his right to privacy to the extent that such an invitation converts the home into a commercial center where warrantless arrests upon probable cause are lawful.
We are cognizant of the recent United States Supreme Court decision in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which limits the authority of the police to make a warrantless arrest of a suspect inside his home. We find Payton inapplicable because the entry condemned in that case was without consent. In Griffin v. State, 419 So.2d 320 (Fla. 1982), our supreme court distinguished Payton on the same basis when it said: "Payton dealt with a non-consensual entry, which is not the situation in this case. Defendant, while in his home, committed a felony in the presence of the officer. This is an exigent circumstance which allows a warrantless arrest in the home without violating the Payton rule." 419 So.2d at 322.
Likewise, the defendant's reliance on Benefield v. State, 160 So.2d 706 (Fla. 1964), is misplaced. In that case, Hollander and Rosenthal told the police that Benefield had offered to help them secure a liquor license for payment of $5,000. After obtaining some marked money, the two of them along with some city detectives went to Benefield's home. Hollander and Rosenthal entered the home for the purpose of delivering the money to Benefield. When the transaction was completed, Hollander and Rosenthal left the home. As they came out, they told the police that Benefield had the money. Thereupon, the police immediately went inside, placed Benefield under arrest and seized the marked money. Our supreme court quashed the arrest and the ensuing seizure because when entering the house the police failed to comply with the requirements of the knock and announce law. Although the foregoing facts bear some resemblance to those of the instant case, there are some compelling distinctions. Hollander and Rosenthal, the two persons invited into the defendant's home, were not police officers. Moreover, both of them had already left the home before the police had entered. Consequently, the holding of Benefield is also distinguishable.
Finally, we note that our sister court recently quashed a seizure on what appears to be rather similar facts. Bibby v. State, 423 So.2d 970 (Fla. 1st DCA 1982). However, in reaching its conclusion, the court observed that since the state had stipulated that no exigent circumstances required the officers to enter the home, it could not speculate "upon their possible need to protect the incognito officer or reinforce him in an arrest that he hypothetically might have made."
We find nothing illegal in the officers' conduct. Detective Dial needed to obtain entry into the defendant's home in order to establish probable cause. That he masqueraded as a drug buyer does not diminish the fact that he had the defendant's consent to come inside. When he observed the cocaine, he had acquired probable cause. To admit that Dial could have then arrested the defendant on the spot, and yet if he did so, to deny him the ability to obtain back-up support, flies in the face of logic.
We reverse the orders of suppression and remand the cases for further proceedings.
OTT, C.J., and GRIMES, J., concur.
DANAHY, J., dissents with opinion.
DANAHY, Judge, dissenting.
I dissent. While I fully appreciate the officers' concern in this case for their safety and that of the officer inside, I do not believe the trial judge erred in ruling that the officers' testimony, considered in the light of the circumstances here involved, did not meet the state's burden of justifying the warrantless entry.
*1039 I begin my analysis by setting aside any consideration of Florida's "knock and announce" statute.[1] Two months prior to the defendant's arrest in this case, the Supreme Court of the United States rendered its decision in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In that case, the court held that the Fourth Amendment to the United States Constitution[2] prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest, notwithstanding that state law might permit such an entry. The Court referred to its own words on a prior occasion that the "physical entry of a home is the chief evil against which the wording of the Fourth Amendment is directed" and pointed out that it is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. The Court went on to refer to the long settled premise that, absent exigent circumstances, a warrantless entry into a home to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within. Quoting from an opinion of the United States Court of Appeals for the Second Circuit,[3] the court approved the following statement as being in accord with the Court's Fourth Amendment decisions:
To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present. [Emphasis added.]
100 S.Ct. at 1381.
At the trial level in this case, the parties and the trial judge focused on the question whether the officers should have knocked and announced their purpose before entering the defendant's apartment. That analysis tacitly implies that if the officers had knocked and announced their purpose, as required by the Florida statute, the entry would have been permissible. This is not so. As far as warrantless entries into a home are concerned, after the Payton decision, all the knocking and announcing in the world will not justify a warrantless entry unless there are exigent circumstances present; and under Florida law, if exigent circumstances are present, no knocking and announcing are required.
In Benefield v. State, 160 So.2d 706 (Fla. 1964), the late Justice Glenn Terrell pointed out that Florida's knock and announce statute is a codification of the common law rule, to which there are recognized exceptions. These exceptions have come to be equated with the concept of exigent circumstances. State v. Moyer, 394 So.2d 433 (Fla. 2d DCA 1980); annot., 17 A.L.R. 4th 301 (1982). Indeed, the exceptions must equate to exigent circumstances. Williams v. State, 403 So.2d 430 (Fla. 3d DCA 1981).
The question, therefore, is simply whether there were exigent circumstances present in this case. The burden is on *1040 the state to establish the existence of such circumstances. Norman v. State, 379 So.2d 643 (Fla. 1980). It has been said that the term "exigent circumstances," in conjunction with an arrest in a residence, refers to a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action. United States v. Blake, 632 F.2d 731 (9th Cir.1980). One court has suggested that the underlying pragmatic question is whether the exceedingly strong privacy interest in one's residence is outweighed by the risk that delay will engender injury, destruction of evidence, or escape, and that those asserting the propriety of their entry bear a heavy burden of showing that they had an urgent need to cross the threshold without a warrant. United States v. Acevedo, 627 F.2d 68 (7th Cir.1980). Several courts have attempted to catalog those sets of circumstances deemed to be exigent. E.g., United States v. Kreimes, 649 F.2d 1185 (5th Cir.1981); Dorman v. United States, 435 F.2d 385 (D.C. Cir.1970). Other courts have avoided adhering to any such catalog and have held simply that the exigent circumstances doctrine is applicable only within the narrow range of circumstances that present a real danger to the police or the public or a real danger that evidence or a suspect might be lost. E.g., United States v. Bulman, 667 F.2d 1374 (11th Cir.1982).
The facts in this case, when assessed against these criteria, fail to establish exigent circumstances justifying the warrantless entry into the defendant's apartment. The officers were not in hot pursuit of a suspect who might be expected to escape unless the officers acted immediately. There was no risk of destruction of evidence; Detective Dial and the confidential informant had completed the buy and were free to leave the defendant's apartment with the evidence in their possession. Such facts are not comparable to those involved in cases in which the possibility of escape or destruction of evidence have been held sufficient to justify a warrantless entry. United States v. Turner, 650 F.2d 526 (4th Cir.1981); United States v. Gomez, 633 F.2d 999 (2d Cir.1980); United States v. Acevedo, 627 F.2d 68 (7th Cir.1980); State v. Kelly, 287 So.2d 13 (Fla. 1973); State v. English, 308 So.2d 636 (Fla. 3d DCA 1975).
The state's argument before the trial judge and here has focused on the question of danger to the detective and confidential informant inside the defendant's apartment, and danger to the arresting officers which might have ensued had they knocked and announced their purpose. The officers testified that their past experience led them to believe their decision not to knock and announce was prudent, a belief which proved to be well founded since their search of the apartment incident to the arrest of the defendant revealed a loaded handgun on the floor under the stereo set next to the couch on which the defendant was sitting. But these dangers arose from the officers' desire to make an immediate warrantless entry into the defendant's home. There is nothing to suggest that the undercover officer and confidential informant were in any danger inside the defendant's apartment, or that they were not free to leave. The outside officers made no attempt to justify their entry as necessary to support Detective Dial in an arrest of the defendant. Indeed, it seems clear that Detective Dial had no intention of arresting the defendant on the spot by himself. The officers simply entered for the purpose of making an arrest, and the question is whether they could constitutionally do so without a warrant. Payton says no, unless there were exigent circumstances.
I agree that by knocking and announcing, the arresting officers might have precipitated all manner of unwelcome events  imperiling their safety and that of the persons inside the apartment. The point, however, is that the warrantless entry was not at all necessary. The exigent circumstances suggested by the state are circumstances which the officers themselves created by choosing to make a warrantless entry rather than obtaining an arrest warrant. Considering the hour and the day of the week, I think it is not unreasonable to conclude that the officers should have obtained a warrant. Contrary to the implication in the majority *1041 opinion, probable cause alone is not enough to supply an element of implied consent to the entry. It is ludicrous to suggest that the defendant in this case impliedly invited the outside police officers into her apartment to arrest her.
I agree that the facts of this case do not bring it within the rule recently announced by our supreme court in Griffin v. State, 419 So.2d 320 (Fla. 1982). In that case, two undercover agents met in the defendant's home to complete a cocaine purchase. During the transaction one of the agents left the home, ostensibly to get scales and money from his car, and returned accompanied by several other officers. The supreme court held that the agent who left the house was free to bring others with him when he utilized his invitation to return and the officers accompanying him were not acting improperly as long as they were in his company. The court distinguished Payton on the ground that Payton dealt with a nonconsensual entry, which was not the situation in Griffin. It is the situation here, however.
I am fully aware that my view conflicts with decisions of at least two other district courts. In State v. Steffani, 398 So.2d 475 (Fla. 3d DCA 1981), the Third District Court of Appeal found no significant difference between those cases in which an undercover officer in a home leaves and returns accompanied by other officers, and a case in which such an officer returns to the home alone and other officers arrive shortly thereafter. The court reasoned that the consensual relinquishment of a defendant's privacy involved in inviting undercover officers into his home extends not only to their own contemplated re-entry but also the causally and temporally closely related actions of other officers who act at their direction and must therefore be deemed to stand in their shoes. In State v. Perry, 398 So.2d 959 (Fla. 4th DCA 1981), the Fourth District Court of Appeal held that a person who invites undercover officers into his home to transact unlawful business surrenders, or waives, his right to privacy insofar as the residence is concerned. In that court's view, such an invitation converts the home into a commercial center, tantamount to a public place, where warrantless arrests upon probable cause are lawful.
I respectfully disagree. I do not believe that the language of Payton permits such an analysis, nor do I believe that the concept of consent to entry recognized in Griffin can be extended as our sister courts have done and as the majority does here. More important, the results reached in Steffani and Perry clearly conflict with the holding of our supreme court in Benefield. The majority opinion attempts to distinguish Benefield on its facts. The distinction is without a difference; if there was no implied consent in Benefield, there could be none here. If the defendant in Benefield did not convert his home into a commercial establishment by inviting persons in to complete an illegal transaction, then the defendant did not do so in the case before us.
In sum, I believe the trial judge correctly determined that the state failed to meet its burden of establishing exigent circumstances in this case. The nonconsensual and warrantless entry by the outside officers into the defendant's home was, in my view, unconstitutional. The First District Court of Appeal has so ruled in a similar case. Bibby v. State, 423 So.2d 970 (Fla. 1st DCA 1982). I agree with that result, which clearly conflicts with our decision here.
NOTES
[1] The knock and announce statute is section 901.19(1), Florida Statutes (1981), which provides that:

If a peace officer fails to gain admittance after he has announced his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, he may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be.
[2] The Fourth Amendment to the United States Constitution is applicable to the states. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Florida Constitution also contains a prohibition against unreasonable searches and seizures; however, our supreme court has held that the search and seizure provision of Florida's constitution imposes no higher standard than that of the Fourth Amendment to the United States Constitution. Hetland v. State, 387 So.2d 963 (Fla. 1980), affirming State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979).
[3] United States v. Reed, 572 F.2d 412, 423 (2d Cir.1978), cert. denied, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978).