HUBBART, Judge.
The central question presented for review is: when (1) an undercover police officer is properly admitted to the defendant’s house under a ruse without a warrant and without announcing his authority and purpose; (2) the defendant thereafter commits a felony in the officer’s presence by offering, in effect, to sell a kilogram of cocaine to the officer in the house; (3) the officer informs the defendant that he is going to a car outside the house to obtain the money to buy the cocaine with the implied understanding that he will return to consummate the sale; (4) the undercover officer walks out of the house, gives a signal to backup police officers to arrest the defendant, and leaves the area in a ear; and (5) backup police officers immediately reenter the defendant’s house, arrest the defendant and seize a quantity of cocaine in the house— is the subject reentry, the defendant’s arrest, and subsequent seizure of drugs unlawful under the Fourth Amendment and Florida’s knock-and-announce statute because it was effected without a warrant and without announcing the backup officer’s authority and purpose prior to reentering the defendant’s house? We hold that the backup officers were not required, as urged, to obtain a warrant and to announce their authority and purpose prior to reentering the defendant’s house to effect the subject arrest because this reentry was impliedly consensual; ac *292 cordingly, we conclude that the trial court did not err in denying the defendant’s motion to suppress the subject cocaine.
I
On October 21, 1992, Detective Rivera of the narcotics bureau of the Dade County Public Safety Department went with a confidential informant to the house of the defendant Almando Fidalgo, pursuant to prearranged negotiations, to purchase a quantity of cocaine. The confidential informant had previously negotiated a price of $16,000 from the defendant for the purchase of the cocaine and had stated that the undercover police officer would be the purchaser. Pursuant to this ruse, the defendant let the undercover officer and the confidential informant into the defendant’s house, took them to a back office, and showed them a kilogram of cocaine which was for sale. Rather than effect an arrest of the defendant at that time, the undercover officer and the confidential informant excused themselves, stating they were going to their car outside to retrieve some money and then would return to buy the cocaine; the defendant said “okay.” This was also a ruse, however, as the prearranged plan was for certain nearby, backup police officers — who were monitoring the conversations in the defendant’s home through a hidden electronic “body bug” worn by the undercover officer — to reenter the defendant’s house and arrest the defendant.
The undercover police officer and the confidential informant left the defendant’s house and went to the confidential informant’s car which was parked in the driveway of the defendant’s house. The officer then raised the trunk of the car, which was a prearranged signal to the backup officers in the area; the undercover officer also talked to the backup officers, either through the officer’s “body bug” or a cellular telephone, informing the officers what had happened inside the house and where the kilogram of cocaine was located in the house.
The backup officers then immediately pulled up in a car in front of the defendant’s house; as they did so, the undercover officer and the confidential informant left the area in their car. The backup officers immediately entered the defendant’s house; the defendant had left the door slightly open, anticipating the return of the undercover officer and the confidential informant or their associates to consummate the sale. The backup officers did not have an arrest warrant for the defendant and did not announce their authority and purpose prior to entering the defendant’s house. The defendant was arrested in the house and the cocaine previously shown to the undercover officer, plus some additional cocaine, was seized therein.
The defendant was subsequently charged by information with trafficking in cocaine [§ 893.135(l)(b), Fla.Stat. (1991) ], and a related misdemeanor charge. The defendant filed a motion to suppress the cocaine seized from his house on the ground that the reentry into the house by the backup police officers was unlawful because it was accomplished without a warrant and without a pri- or announcement of their authority and purpose. The trial court took testimony on the motion, the above-stated facts were established, and the motion to suppress was denied. The defendant then entered a plea of nolo contendere to the offenses charged in the information and, upon the state’s stipulation that the motion was dispositive of its case, reserved for appeal the denial of his motion to suppress. The trial court accepted the plea and sentenced the defendant to fifteen years imprisonment on the trafficking in cocaine count and to time served on the misdemeanor count. The defendant appeals.
II
The law is well settled that a non-consensual police entry into the home of a suspect, in order to arrest the suspect therein for a felony, is unreasonable under the Fourth Amendment if it is accomplished without an arrest warrant and in the absence of exigent circumstances. See, e.g., Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The law is equally well settled that a noneonsensual police entry into private premises to effect an arrest therein is unlawful if, subject to certain exceptions, the police fail to announce their authority and purpose prior to entering the premises. See, e.g., § 901.19(1), Fla.Stat. (1991); State v. *293 Kelly, 287 So.2d 13 (Fla.1973); Benefield v. State, 160 So.2d 706 (Fla.1964).
On the other hand, if the police entry into a defendant’s home is consensual in nature, the above rules do not apply as such rules are only applicable to a noneonsensual police entry. This result is not changed by the fact that the defendant’s consent to the police entry is secured through fraud, deception or misplaced confidence; such an entry is still not considered a “search” in the Fourth Amendment sense, and, consequently, does not require the presence of a warrant or exigent circumstances and need not be preceded by an announcement of official authority and purpose. See, e.g., Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); Hojfa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).
In this connection, Florida courts have consistently upheld the lawfulness of a police entry into a defendant’s dwelling or private premises to effect an arrest of the defendant therein, although accomplished without a warrant or exigent circumstances and without a preceding announcement of official authority and purpose, if the entry is effected immediately after (1) a police undercover officer or agent has made an initial consensual entry into the defendant’s home under a ruse of purchasing illegal drugs from the defendant, (2) the defendant has shown illegal drugs to the undercover officer or agent on the premises for the purpose of sale, and (3) the undercover officer or agent has left the premises with the understanding that he will immediately return with the purchase money for the drugs. The underlying theory behind these decisions is that the defendant has impliedly consented to the reentry of the undercover officer or agent or their associates into the defendant’s premises so as to complete the ongoing sale of drugs, and, consequently, a warrant or exigent circumstances and a preceding announcement of official authority and purpose is not required.[1] As was stated in State v. Steffani 398 So.2d 475 (Fla. 3d DCA 1981):
“Since [the defendant] would have no constitutional or statutory complaint had [the undercover police officers] initially arrested him and seized his drugs [when he offered the drugs for sale on the defendant’s premises], it should make no constitutional or statutory difference to him either that these events occurred a few minutes later or that they were formally accomplished by other officers summoned solely for the salutary purpose of protecting the undercover men. In sum, we think ... that the consensual relinquishment of the defendant’s privacy involved in inviting the undercover officers into his home extends not only to their own contemplated reentry but also to the causally and temporally closely-related actions of other officers who act at their direction and must therefore be deemed to stand in their shoes.”
Id. at 478 (footnotes omitted).
Based on this rationale, such police reentries have been upheld where backup police officers accomplish the reentry and arrest the defendant in the house, while the undercover officer (1) stops at the threshold of the premises without entering same, State v. Fernandez, 538 So.2d 899 (Fla. 3d DCA 1989), or (2) enters the premises later to seize the drugs, State v. Lopez, 590 So.2d 1045 (Fla. 3d DCA 1991), or (3) is still on the premises, having never left in the first instance. State v. Hume, 512 So.2d 185 (Fla. 1987). As we have stated, there is no requirement “that the undercover officer stand in any particular place while the backup officers are effecting the arrest” because, in any event, the backup officers have an independent implied consent to reenter the premises as associates of the undercover officer. Lopez, 590 So.2d at 1046.
*294 III
Turning to the instant case, we have no trouble in concluding that the reentry into the defendant’s house by the backup officers was impliedly consensual and therefore was properly accomplished without a warrant or exigent circumstances and without a prior announcement of official authority and purpose. We reject the defendant’s contrary argument.
Clearly, the initial entry into the defendant’s house by Detective Rivera and the confidential informant, although accomplished by a ruse, was consensual in nature and therefore did not require the presence of a warrant or exigent circumstances and a prior police announcement of authority and purpose. Lewis; Hoffa. It is equally clear that Detective Rivera had probable cause to arrest the defendant without an arrest warrant for trafficking in cocaine when the defendant displayed a kilogram of cocaine for sale in the back office of the defendant’s house. § 901.15(3), Fla.Stat. (1991).
Clearly, it can make no constitutional or statutory difference whether Detective Rivera arrested the defendant at that point — or, for reasons of officer safety, backup officers immediately enter the premises to effect the arrest; indeed, that is the precise holding of the Florida Supreme Court in State v. Hume, 512 So.2d 185 (Fla.1987). Similarly, it should make no constitutional or statutory difference when, as here, the backup officers enter the premises to effect the arrest immediately after the undercover officer has left the premises with an implied invitation to return momentarily to consummate the drug sale. In both instances, the initial police entry is clearly consensual and violates no constitutional or statutory requirement; moreover, in both instances, the subsequent police reentry effects no additional privacy intrusion and is also consensual.
The defendant’s central argument is that the backup officers had no implied consent to reenter the defendant’s house because Detective Rivera and the confidential informant had just pulled off in their car when the reentry was accomplished. We cannot agree. The backup officers’ reentry in the defendant’s house without the contemporaneous presence of the undercover officer has previously been upheld by this court on the theory that the undercover officer and his associates both have independent implied consent to return to consummate the ongoing drug sale. Lopez; Fernandez; Steffani. Beyond that, there surely can be no policy reason to require the undercover officer to make a formal appearance on the premises after the arrest, as urged, so as to somehow retroactively validate the backup officers’ reentry. Such a rule would clearly secure no additional privacy for the defendant’s home or further any of the historical purposes of the Fourth Amendment or Section 901.19(1), Florida Statutes (1991).
For the above-stated reasons, the final judgments of conviction and sentences under review are, in all respects.
Affirmed.

. Griffin v. State, 419 So.2d 320 (Fla. 1982); State v. Lopez, 590 So.2d 1045 (Fla. 3d DCA 1991); State v. Cantrell, 426 So.2d 1035 (Fla. 2d DCA), rev. denied, 434 So.2d 886 (Fla. 1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 721, 79 L.Ed.2d 182 (1984); State v. Steffani, 398 So.2d 475 (Fla. 3d DCA 1981), approved, 419 So.2d 323 (Fla. 1982); State v. Schwartz, 398 So.2d 460 (Fla. 4th DCA 1981); Lawrence v. State, 388 So.2d 1250 (Fla. 4th DCA 1980), approved sub nom. Griffin v. State, 419 So.2d 320 (Fla.1982); Koptyra v. State, 172 So.2d 628 (Fla. 2d DCA 1965); see State v. Hume, 512 So.2d 185 (Fla. 1987).