512 So.2d 185 (1987)
STATE of Florida, Petitioner,
v.
Robert William HUME, Respondent.
Robert William Hume, Petitioner,
v.
State of Florida, Respondent.
Nos. 66691, 66704.
Supreme Court of Florida.
September 10, 1987.
*186 Robert A. Butterworth, Atty. Gen. and Gregory G. Costas, Asst. Atty. Gen., Tallahassee, for petitioner/respondent.
Thomas W. Kurrus and Larry G. Turner of the Law Offices of Turner, Kurrus & Griscti, P.A., Gainesville, for respondent/petitioner.
OVERTON, Justice.
Both the state and Robert William Hume petition this Court to review State v. Hume, 463 So.2d 499 (Fla. 1st DCA 1985), in which the district court construed article I, section 12, of the Florida Constitution (the new search-and-seizure section), and applied section 901.19, Florida Statutes (1985) (knock-and-announce statute). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We hold that it was error to suppress statements transmitted by an electronic eavesdropping device worn by a police undercover agent in Hume's home and to suppress contraband seized immediately following Hume's arrest.
The facts reflect that a police undercover agent knew Hume and had purchased cocaine from him. On January 10, 1983, the police obtained an arrest warrant for Hume based on his narcotics violations. One week later, the police undercover agent equipped himself with a "body bug," a device designed to record and transmit his conversations to fellow officers, and went to Hume's apartment to purchase a larger amount of cocaine. Hume invited the undercover agent to enter and escorted him to the bedroom, where Hume displayed plastic bags containing marijuana and cocaine. After seeing the illegal drugs, the undercover agent used a code word in their conversation to indicate to officers waiting outside that contraband was present. He then proceeded with Hume to the front door of the apartment. As the undercover agent opened the front door, the other officers, who possessed the warrant for Hume's arrest, immediately entered and arrested Hume. The undercover agent returned to the bedroom and seized the drugs and drug paraphernalia. Hume was charged with unlawful sale/delivery of cocaine, trafficking in cocaine, and unlawful possession of marijuana with intent to distribute.
This cause concerns two search and seizure issues: (1) the recorded conversation in Hume's home by the undercover agent and (2) the asserted failure of the arresting officers to comply with the knock-and-announce requirement of section 901.19, Florida Statutes.

Sarmiento: Electronic Eavesdropping in the Home
Hume moved to suppress the evidence of his conversation transmitted by the agent's body bug on the authority of State v. Sarmiento, 397 So.2d 643 (Fla. 1981), which held that, under the then-existing provisions of article I, section 12, of the Florida Constitution, the interception and *187 simultaneous transmission of personal conversations within a defendant's home violated the defendant's reasonable expectation of privacy and was prohibited by that section of the Florida Constitution. The trial court in the instant case granted the motion to suppress, but the district court reversed, holding that Sarmiento was no longer legal precedent because it did not survive the conformity amendment to article I, section 12.[1] That amendment provides that the right of the people to be secure in their persons, houses, papers and effects against the unreasonable interception of private communications shall be construed in conformity with the fourth amendment to the United States Constitution, as interpreted by the United States Supreme Court.[2] The district court concluded that, under United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), the surreptitious interception and transmission of conversations between an undercover agent and a defendant in the defendant's home does not violate the fourth amendment of the United States Constitution.
In this proceeding, Hume contends that the recent amendment to section 12 of article I does not affect our Sarmiento precedent. We disagree. In our view, the amendment to section 12 was intended, in part, to overrule our decision in Sarmiento. We conclude that, in United States v. White, the United States Supreme Court ruled directly on the Sarmiento factual situation of an uninvited third party's interception of conversations occurring within the sanctity of the home through electronic equipment. The issue in White was set forth as follows:
The issue before us is whether the Fourth Amendment bars from evidence the testimony of governmental agents who related certain conversations which had occurred between defendant White and a government informant, Harvey Jackson, and which the agents overheard by monitoring the frequency of a radio transmitter carried by Jackson and concealed on his person. On four occasions the conversations took place in Jackson's home... . Four other conversations  one in respondent's home, one in a restaurant, and two in Jackson's car  were overheard by the use of radio equipment.
Id. at 746-47, 91 S.Ct. at 1123 (footnotes omitted; emphasis added). The opinion, written by Justice White, states:
Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.
... If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case.
... .
Nor should we be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable. An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent. It may also be that with the recording in existence it is less likely that the informant will change his mind, less chance that threat or injury will suppress unfavorable evidence and less chance that cross-examination will confound the testimony. Considerations like these obviously do not favor the defendant, but we are not prepared to hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question.
It is thus untenable to consider the activities and reports of the police agent himself, though acting without a warrant, to be a "reasonable" investigative effort and lawful under the Fourth Amendment but to view the same agent with a recorder or transmitter as conducting an "unreasonable" and unconstitutional search and seizure.
*188 Id. at 751-53, 91 S.Ct. at 1125-27 (citations omitted). Chief Justice Burger and Justices Stewart and Blackmun joined in the opinion with Justice White. Justice Black concurred in result because he would hold, for the reasons he expressed in Katz v. United States, 389 U.S. 347, 364, 88 S.Ct. 507, 518, 19 L.Ed.2d 576 (1967), that eavesdropping carried on by electronic means does not constitute a search or seizure and is thus not violative of the fourth amendment. Further, the United States Supreme Court reaffirmed this holding in United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). In a seven-to-two majority opinion, the Court cited White for the proposition that
"[i]f the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks."
440 U.S. at 751, 99 S.Ct. at 1471 (quoting 401 U.S. at 751, 91 S.Ct. at 1126).
We conclude that the White and Caceres decisions establish clear precedent that the recording of conversations between a defendant and an undercover agent in a defendant's home, such as occurred in the instant case, does not violate the fourth amendment of the United States Constitution and, accordingly, does not violate the newly adopted article I, section 12, of the Florida Constitution. We also agree with the state that our right-of-privacy provision, article I, section 23, of the Florida Constitution, does not modify the applicability of article I, section 12, particularly since the people adopted section 23 prior to the present section 12.

*189 Statutory Knock-and-Announce Requirements

In the second issue, the trial court suppressed the seized contraband observed by the undercover agent in the bedroom because the arresting officers, in entering Hume's apartment with the arrest warrant, failed to comply with Florida's knock-and-announce statute, section 901.19(1), and because the warrantless seizure was not justified by any exception to the warrant requirement. The district court affirmed the trial court in suppressing this evidence. In doing so, the district court noted that neither party had challenged the trial court's finding that the agent, after signalling to the other officers, "on his own initiative opened the front door to allow the outside officers to enter and arrest [Hume]." 463 So.2d at 500 (footnote omitted). The district court recognized a line of cases holding that the knock-and-announce statute does not apply when an undercover officer departs a defendant's residence and then re-enters with other officers who assist in arresting a defendant, but distinguished this line from the instant case on the basis that the agent did not leave and re-enter Hume's apartment prior to accomplishing the arrest: "While it is arguable that this fact constitutes a distinction without a difference ... we are not prepared to so hold as a matter of law, especially given the mandate to strictly construe exceptions to Section 901.19(1)." 463 So.2d at 501-02.
Numerous cases by this Court and other district courts of appeal have determined that the knock-and-announce statute is not applicable when an undercover officer re-enters the premises with assistants after having previously been admitted voluntarily. See Griffin v. State, 419 So.2d 320 (Fla. 1982); State v. Cantrell, 426 So.2d 1035 (Fla. 2d DCA), review denied, 434 So.2d 886 (Fla. 1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 721, 79 L.Ed.2d 182 (1984); State v. Steffani, 398 So.2d 475 (Fla. 3d DCA 1981), approved, 419 So.2d 323 (Fla. 1982); State v. Schwartz, 398 So.2d 460 (Fla. 4th DCA 1981); State v. Perry, 398 So.2d 959 (Fla. 4th DCA 1981), review denied, 421 So.2d 68 (Fla. 1982); Lawrence v. State, 388 So.2d 1250 (Fla. 4th DCA 1980), approved, 419 So.2d 320 (Fla. 1982); Koptyra v. State, 172 So.2d 628 (Fla. 2d DCA 1965). We find no real factual distinction between this line of cases and the instant case. Therefore, we quash this portion of the district court decision.
Once Hume invited the undercover agent into his apartment and openly engaged in criminal conduct, he relinquished his right to assert a violation of his reasonable expectation of privacy and immediately subjected himself to arrest and the contraband in plain view to seizure. Under these circumstances, we do not find that the statutory provisions require that arresting officers "knock and announce" after the undercover agent within the premises has summoned them to assist in safely arresting a defendant and seizing the contraband. Since the undercover agent had already lawfully intruded into Hume's apartment and since he could have arrested Hume inside the premises at any time, we find that the enlistment of additional officers waiting outside the home did not constitute an intrusion offensive to section 901.19(1) or Hume's claimed expectations of privacy. To rule otherwise would be contrary, in our view, to the intent of section 901.19(1) and would compromise an officer's safety. Thus, under these circumstances, both the arrest of Hume and the seizure of the contraband were valid.
For the reasons expressed, we approve in part and quash in part the opinion of the district court and remand for further proceedings consistent with this opinion.
It is so ordered.
McDONALD, C.J., and EHRLICH and SHAW, JJ., concur.
BARKETT, J., dissents with an opinion.
BARKETT, Justice, dissenting.
I dissent. Article I, section 12, has not been repealed and therefore remains vital to protect Florida citizens against unreasonable searches and seizures in situations which have not yet been, and in some cases could never be, resolved by the United *190 States Supreme Court. Article I, section 12, unlike the fourth amendment, provides an express guarantee "against the unreasonable interception of private communications by any means." This express right was not modified and must continue to be given full force and effect apart from the vagaries of fourth amendment jurisprudence.[1] Thus, application of our exclusionary rule with respect to this right cannot be construed in conformity with United States Supreme Court decisions. Therefore, federal judicial doctrines developed in the electronic surveillance area do not apply when construing article I, section 12, and this Court's decision in State v. Sarmiento, 397 So.2d 643 (Fla. 1981), is dispositive of the case at bar.
Moreover, in addition to the express rights of article I, section 12, other provisions that protect Florida citizens are implicated in this case. Florida citizens' rights to privacy, particularly in the sanctity of the home, are expressly protected in this state by constitutional and statutory guarantees. See, e.g., art. I, § 23, Fla. Const.; § 933.18, Fla. Stat. (1985). Because these protections have no counterpart in federal law, whether or not the private conversation that is being transmitted or recorded takes place in the home or elsewhere is not relevant to United States Supreme Court analysis. See United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). United States Supreme Court decisions are not controlling, therefore, because in determining what privacy expectations are constitutionally justifiable under Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), we cannot ignore these specific expressions of the will of the people of Florida.
There is no bright line between the privacy protections afforded under article I, section 12, and the privacy interests protected by article I, section 23. Section 23 comes into play in cases involving electronic surveillance because this aspect of governmental activity infringing on privacy is one that section 23 was particularly designed to check. The people have recognized and acted to protect themselves against the dangers inherent in unauthorized use of electronic surveillance. We cannot interpret the conformity amendment as negating, by implication, rights that the voters of this state have designated to be of constitutional stature.
Even if we were bound in the area of electronic surveillance by United States Supreme Court decisions existing at the time of our article I, section 12 amendment, I do not believe that any of that Court's decisions are controlling here. White is the closest case factually; however, it was only a plurality decision.[2] I agree with Judge Hubbart that "the authority of the White Court's equivocal ruling is itself doubtful as it ... did not muster a majority of the Court. We are thus left, at best, with federal support for both sides of the constitutional issue stated herein." State v. Shaktman, 389 So.2d 1045, 1049 (Fla. 3d DCA 1980) (Hubbart, J., dissenting), review denied, 397 So.2d 779 (Fla. 1981). See also Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977); Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976) (holding of court limited to position subscribed to by members who concurred on narrowest grounds).
Accordingly, I dissent.
NOTES
[1] The conformity amendment was approved by Florida voters in Nov., 1982, and became effective on Jan. 3, 1983.
[2] Prior to Jan. 3, 1983, art. I, § 12, read:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence.
Art. I, § 12, now reads:
The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
[1] Any other reading of our amendment could conceivably result in complete nullification of this express protection. For example, the United States Supreme Court could recede from its present position and decide that electronic surveillance is not a search under the fourth amendment. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Black, J., dissenting).
[2] In a sharply divided opinion, five justices concurred in the result, Justice Black joining the majority based on the view that eavesdropping by electronic means in any situation is not covered by the fourth amendment. See United States v. White, 401 U.S. 745, 754, 91 S.Ct. 1122, 1127, 28 L.Ed.2d 453 (1971) (Black, J., concurring) (citing his dissent in Katz, 389 U.S. at 349-364, 88 S.Ct. at 509-518.)