WEBSTER, J.
Appellant, convicted following a jury trial of possession of cocaine and tampering with evidence, seeks review of an order denying his motions to suppress a plastic bag containing cocaine, which appellant had swallowed and subsequently vomited during the course of medical treatment performed in response to ingestion of the bag. Because we conclude that there is competent, substantial evidence to support the trial court’s finding that the warrant-less retrieval was justified by exigent circumstances, and that the medical procedure performed was reasonable, we affirm.
I.
The evidence presented at the suppression hearings established the following. Two officers saw appellant sitting in a car in the parking lot of an abandoned convenience store, which was “a bad drug and prostitution area.” One of the officers observed a white male leaning into the car’s window, and suspected a drug transaction. Although the car’s engine was running and its lights were on, it had no tag light. The officer approached appellant, and asked to see some identification, which appellant provided. Because the car was running and appellant seemed unusually nervous, the officer asked appellant to step out of the car, for his safety. The officer also asked for permission to search appellant and his car, which was denied. Appellant “started looking around as if he wanted to run.” Therefore, the officer patted appellant down, and placed him in the rear of his patrol car. Although the officer did not feel any weapon, he did feel a plastic bag, which he thought might contain drugs. While the officer was calling for a K-9 unit and checking appellant’s identification, he saw appellant pull from a pocket a clear plastic bag approximately seven inches square (which was described as more the size of a freezer bag than a sandwich bag) containing a white substance that appeared to be cocaine. Appellant put the bag in his mouth and began to chew. He then swallowed the bag. A struggle ensued when the officer tried to stop appellant. The officer arrested appellant for tampering with evidence and battery on a law enforcement officer. Then, because the officer had “seen people die” from swallowing cocaine, the officer and his partner rushed appellant to the hospital.
At the hospital, appellant refused treatment. The officer consulted with a doctor, who told him that a person could die from ingesting cocaine. Believing that appellant would be in danger of dying if not treated, the officer signed a Baker Act form stating that he believed appellant was mentally ill because he was refusing treat *1006 ment notwithstanding a substantial likelihood that he would suffer serious harm if not treated. Appellant was then treated. The officer acknowledged having told medical personnel that, if possible, he would like them to retrieve the bag.
One of the doctors who treated appellant in the emergency room testified that appellant denied ingesting any substance, but that he did not believe appellant. He said that appellant could have died from ingesting cocaine. He also said that swallowing a freezer bag could be life-threatening because it could cause a bowel obstruction. Because of these concerns, the doctor said he would have treated appellant even if the officer had not signed the Baker Act form.
That doctor and another, who had also treated appellant, testified that they followed the treatment protocol for toxic in-gestions. A nasal-gastric tube was placed through appellant’s nose and down into his stomach. Appellant was then given charcoal to neutralize the contents of his stomach, and a substance called “Golytely” to cause rapid evacuation of his bowels. Appellant was also given Reglan intravenously to try to prevent vomiting. The process normally takes two to six hours to complete. However, notwithstanding the Re-glan, appellant vomited the plastic bag containing cocaine. According to the doctors, the procedure performed was absolutely necessary, given the way appellant presented at the emergency room.
One doctor testified that the procedure performed was a very common one, which was minimally intrusive. He said that the procedure is “as uncomfortable as having diarrhea.” The other doctor testified that the procedure would not generally be painful. There would merely be some “abdominal discomfort.”
The trial court denied the motions to suppress, finding that the warrantless retrieval of the bag was justified by exigent circumstances in the form of a life-threatening emergency and the imminent destruction of evidence, and that the medical procedure performed was reasonable. At trial, appellant was found not guilty of battery on a law enforcement officer, but guilty of possession of cocaine and tampering with evidence. This appeal follows.
II.
Appellant does not challenge either his initial stop, or his subsequent arrest. His sole argument on appeal is that the trial court’s denial of his motions to suppress the bag was erroneous because its noncon-sensual removal from his stomach violated the Fourth Amendment to the United States Constitution and article I, sections 12 and 23, of the Florida Constitution.
A.
Article I, section 23, of the Florida Constitution mandates that, “except as otherwise provided” by that document, “[ejvery natural person has the right to be let alone and free from governmental intrusion into the person’s private life.” Our supreme court has held that this “right of privacy is a fundamental right” which “is much broader in scope than that of the Federal Constitution.” Winfield v. Div. of Pari-Mutuel Wagering, 477 So.2d 544, 547, 548 (Fla.1985). It has also held that, pursuant to article I, section 23, “a compe tent person has the constitutional right to choose or refuse medical treatment.” In re Guardianship of Browning, 568 So.2d 4, 11 (Fla.1990). Appellant argues that, because the bag was obtained as the result of the state’s failure to honor his refusal of medical treatment, the bag should have been suppressed. We disagree.
We conclude that article I, section 23, has no bearing on the issue raised by appellant. Rather, the question is wheth *1007 er, notwithstanding appellant’s refusal to consent to treatment, the recovery of the bag was the result of an “unreasonable search,” as that term is used in article I, section 12, of the Florida Constitution and the Fourth Amendment to the United States Constitution. Article I, section 12, of the Florida Constitution mandates that the protection against unreasonable searches afforded by that provision “be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.” “Article I, section 23, does not modify the applicability of [a]rti-cle I, section 12, so as to provide more protection than that provided under the Fourth Amendment.” L.S. v. State, 805 So.2d 1004, 1008 (Fla. 1st DCA 2001) (citing State v. Hume, 512 So.2d 185, 188 (Fla.1987), and State v. Jimeno, 588 So.2d 233 (Fla.1991)).
B.
Appellant contends that his motions to suppress should have been granted because no warrant was obtained before the medically intrusive body search was conducted. Again we disagree.
Both article I, section 12, of the Florida Constitution and the Fourth Amendment to the United States Constitution proscribe “unreasonable searches.” “A warrantless search is presumptively unreasonable .... But, when probable cause exists, if ‘exigent circumstances’ make it impossible or impracticable to obtain a warrant, [a] warrantless [search] will be excused.... The risk of removal or destruction of narcotics is a ‘particularly compelling’ exigent circumstance.” United States v. McGregor, 31 F.3d 1067, 1068-69 (11th Cir.1994) (citations omitted). Thus, in Schmerber v. California, 384 U.S. 757, 770-71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court concluded that a police officer was justified in directing a physician in a hospital to perform a blood test on an individual suspected of driving while under the influence of alcohol without first obtaining a search warrant. The Court reasoned that “[t]he officer ... might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened ‘the destruction of evidence.’ ” Id. at 770, 86 S.Ct. 1826 (citation omitted). Another exigent circumstance recognized as justifying a search without first obtaining a warrant is the existence of a life-threatening emergency. See, e.g., United States v. Borchardt, 809 F.2d 1115 (5th Cir.1987) (a nurse’s administration of an anti-narcotic drug which caused the defendant to vomit several packets of heroin was not an unreasonable search, given the existence of a life-threatening emergency); United States v. Mayes, 670 F.2d 126, 128 (9th Cir.1982) (“[t]he Fourth Amendment does not bar governmental officials from making warrantless searches and seizures ... where they reasonably believe that a search is required to deal with a life-threatening emergency”); State v. Hutchins, 636 So.2d 552, 553 (Fla. 2d DCA 1994) (a warrantless search of the defendant’s pocket by police and seizure of illegal drugs therein was reasonably necessary to assist the defendant in a potentially life-threatening situation where the defendant was disoriented and indicated he had been drinking and had taken “four or five pills”); Gilbert v. State, 289 So.2d 475 (Fla. 1st DCA 1974) (a warrantless search of defendant’s jacket, which resulted in the discovery of illegal drugs, was justified by exigent circumstances where the defendant was disoriented and threatened to kill herself and police were reasonably concerned the defendant might try to harm herself with weapons concealed in her jacket).
*1008 The trial court found that the police officers’ failure to obtain a warrant was justified by the risk of the imminent destruction of evidence and the potentially life-threatening situation in which appellant placed himself when he swallowed the bag. Appellant argues that the evidence does not support the existence of either exigent circumstance. After a careful review of the record, we conclude that it does. “A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Terry v. State, 668 So.2d 954, 958 (Fla.1996). Applying this standard to the evidence presented at the suppression hearings, we are satisfied that the trial court’s findings are amply supported by that evidence. In doing so, we note that appellant does not challenge the existence of probable cause for the search.
■ ' C.
Appellant further contends that, even if the officers were justified in acting without a warrant, the medical procedure employed was “unreasonable” for Fourth Amendment purposes. We are, again, unable to agree.
Citing Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), in Winston v. Lee, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985), the Court explained “that the ordinary requirements of the Fourth Amendment,” i.e., probable cause and, absent exigent circumstances, a warrant, are “the threshold requirements” when a search entails an “intrusion[] into the human body,” id. at 760, 105 S.Ct. 1611, because “[a] compelled ... intrusion into an individual’s body for evidence ... implicates expectations of privacy and security of such magnitude that the intrusion may be ‘unreasonable’ even if likely to produce evidence of a crime.” Id. at 759, 105 S.Ct. 1611. In such cases, the Court held that a balancing test must be applied to determine whether, even when “the threshold requirements” are met, the search remains “unreasonable” for Fourth Amendment purposes. On the one hand, a court reviewing the legality of such a search must consider “the extent to which the procedure may threaten the safety or health of the individual” and “the extent of intrusion upon the individual’s dignitary interests in personal privacy and bodily integrity.” Id. at 761, 105 S.Ct. 1611. Against this, the court must consider “the community’s interest in fairly and accurately determining guilt or innocence.” Id. at 762, 105 S.Ct. 1611. Applying this test, the Court reaffirmed the reasonableness of the test for blood alcohol upheld in Schmerber. However, it concluded that the surgical removal, under general anesthesia, of a bullet from a robbery suspect’s chest would be “unreasonable” for Fourth Amendment purposes. The Court based its conclusion on the following considerations: (1) while the magnitude of the threat to the health and safety of the suspect was disputed, there was substantial evidence that the surgery would clearly involve some risk; (2) the use of general anesthesia would constitute “an ‘extensive’ intrusion on [the suspect’s] personal privacy and bodily integrity,” id. at 764, 86 S.Ct. 1826; and (3) it was highly questionable whether the bullet would be of any value to the prosecution. It summarized its view as follows:
The operation sought will intrude substantially on respondent’s protected interests. The medical risks of the operation, although apparently not extremely severe, are a subject of considerable dispute; the very uncertainty militates against finding the operation to be “rea *1009 sonable.” In addition, the intrusion on respondent’s privacy interests entailed by the operation can only be characterized as severe. On the other hand, although the bullet may turn out to be useful to the Commonwealth in prosecuting respondent, the Commonwealth has failed to demonstrate a compelling need for it. We believe that in these circumstances the Commonwealth has failed to demonstrate that it would be “reasonable” under the terms of the Fourth Amendment to search for evidence of this crime by means of the contemplated surgery.
Id. at 766, 86 S.Ct. 1826.
Here, the medical procedure performed on appellant was more intrusive than that in Schmerber, but less intrusive than that in Winston. Applying the Schmer-ber/Winston test, it is apparent from the evidence that the procedure entailed virtually no threat to appellant’s safety or health. The procedure was a common treatment protocol, performed in a hospital emergency room by physicians. It was minimally intrusive, and generally involved no more than some “abdominal discomfort.” While there was certainly some intrusion upon appellant’s “dignitary interests in personal privacy and bodily integrity,” the extent of the intrusion does not approach that found to be “unreasonable” in Winston. On the other hand, there can be no dispute that appellant’s prosecution would have been most difficult, if not impossible, without the bag. Based on this balancing of interests, we conclude that the procedure performed was not “unreasonable,” as that term is used in article I, section 12, of the Florida Constitution and the Fourth Amendment to the United States Constitution. We note that, while this case appears to be one of first impression in Florida, decisions of courts in other jurisdictions which have considered this issue support the conclusion we reach. See State v. Strong, 493 N.W.2d 834 (Iowa 1992); Lewis v. State, 56 S.W.3d 617 (Tex.Ct.App.2001); Oviedo v. State, 767 S.W.2d 214 (Tex.Ct.App.1989).
Appellant contends that Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), compels a conclusion that the medical procedure performed was “unreasonable” for Fourth Amendment purposes. While Rochin involved a medical procedure not unlike that performed on appellant, Rochin is distinguishable in a number of respects. Rochin was decided before the Fourth Amendment was held by the Court to apply to the states. Therefore, it was decided based upon a Fourteenth Amendment substantive due process analysis, which required the Court to consider “ ‘the whole course of the proceedings ... to ascertain whether they offend[ed] those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward' those charged with the most heinous offenses.’ ” Id. at 169, 72 S.Ct. 205 (quoting from Malinski v. New York, 324 U.S. 401, 416-17, 65 S.Ct. 781, 89 L.Ed. 1029 (1945)). In addition to inducing vomiting by the use of an emetic which was forced through a tube into the defendant’s stomach, the Court noted that the police had entered the defendant’s home without a warrant (and apparently without probable cause), forced open the door to the defendant’s bedroom, and attempted physically to force the defendant to open his mouth so that they might retrieve the pills he had put there. Id. at 166, 72 S.Ct. at 206. In addition, Rochin was decided well before Schmerber and Winston, in which the Court developed its test for determining whether a bodily intrusion is “unreasonable” for Fourth Amendment purposes. Accordingly, Rochin must be read in light of those two decisions.
*1010 III.
The Schmerber/Winston balancing test is fact-driven. Accordingly, we emphasize that the result we reach here is, of necessity, based on the facts presented to the trial court, and the trial court’s findings based on those facts. Slightly different facts might well yield a different result.
In summary, we hold that the trial court’s finding that the warrantless retrieval of the bag was justified by exigent circumstances is supported by competent, substantial evidence, and that the medical procedure performed was not “unreasonable,” as that term is used in article I, section 12, of the Florida Constitution and the Fourth Amendment to the United States Constitution. Therefore, we affirm.
AFFIRMED.
PADOVANO and HAWKES, JJ., CONCUR.